IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| United States, ) | Case No. 6:20-cv-04023-DCC-JDA |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Maree Blackston, Barry C. Blackston, ) | |
| Barry C. Blackston *doing business as* ) | |
| Greenville Internal Medicine, ) | |
| GIM Barry Blackston MD PA, Greenville ) | |
| County Office of the Tax Collector, ) | |
| South Carolina Department of Employment ) | |
| and Workforce, Cryptomaria LLC, ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on Plaintiff's motion for summary judgment. [Doc. 53.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases involving litigation by individuals proceeding pro se—which Defendants Maree Blackston ("Maree") and Barry C. Blackston ("Barry") are—and to submit findings and recommendations to the District Court.

Plaintiff filed this action on November 18, 2020, seeking relief relating to several failures of certain Defendants to meet their federal tax obligations. [Doc. 1.] On February 2, 2021, the Clerk docketed an Answer on behalf of Barry and Maree ("the Blackstons") and Defendant Barry C. Blackston d/b/a Greenville Internal Medicine ("Greenville Internal Medicine"). [Doc. 20.] The Blackstons purportedly also filed their Answer on behalf of Defendant GIM Barry Blackston MD PA ("GIM"). [Docs. 20; 28 at 2.] However, the Court notified Defendants that GIM is not permitted to proceed pro se and that it was required

to retain counsel and to notify the Court when it had done so. [Doc. 28 at 2–3.] On March 9, 2021, with and GIM not having obtained counsel, the Clerk entered default against it.[1] [Doc. 33.]

On July 16, 2021, Plaintiff filed a motion for summary judgment. [Doc. 53.] On July 26, 2021, the Court issued an Order in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising the pro se Defendants of the summary judgment/dismissal procedure and of the possible consequences of failing to adequately respond to the motion. [Doc. 54.] The time for Defendants to file a response to this motion has expired [*id.*], and the motion is now ripe for review.[2]

## **BACKGROUND**

Viewed in the light most favorable to Defendants, the non-movants, the record reveals the following.[3]

---

[1]The Clerk also entered default against Greenville Internal Medicine because the Court had notified it that it should retain counsel. [Docs. 28 at 2–3; 33.] However, because Greenville Internal Medicine is a sole proprietorship, it is entitled to litigate pro se. *United States v. Hagerman*, 545 F.3d 579, 581 (7th Cir. 2008). Accordingly, the Court set aside the entry of default against Greenville Internal Medicine. [Doc. 74.]

[2]On September 30, 2021, the Court took Plaintiff's motion for summary judgment under advisement and ordered Plaintiff to submit a brief addressing whether the Court can resolve on summary judgment the priority of the potential interest of Defendant Cryptomaria LLC ("Cryptomaria") in the property at issue. [Doc. 76.] Plaintiff filed a responsive brief on October 12, 2021. [Doc. 80.]

[3]The facts alleged in the Complaint are deemed admitted as against GIM. *See* Fed. R. Civ. P. 8(b)(6). On May 11, 2021, the United States served its First Set of Request for Admissions to Maree and Barry. [Doc. 53-2 at 3–6, 8–11.] Because neither Maree nor Barry responded to the requests within 30 days of service [Doc. 53-2 at 1–2], the facts in the requests are deemed admitted. Fed. R. Civ. P. 36(a)(3). The facts in the request served on Barry are also deemed admitted as to Greenville Internal Medicine. *See, e.g., Auto-Owners Ins. Co. v. Rhodes*, 748 S.E.2d 781, 789 (S.C. 2013) ("The fact that [the

The Blackstons are married and reside in Greenville, South Carolina. [Doc. 1 ¶ 8.] In 2000, Barry formed Greenville Internal Medicine, which was a medical office where Barry worked and where other people were employed as well. [*Id.* ¶¶ 16–17.] Greenville Internal Medicine was a sole proprietorship, and Barry was the sole proprietor. [Docs. 1 ¶¶ 9, 17; 53-2 at 8 ¶ 1.] The sole proprietorship incurred some of the federal tax liabilities at issue in this action. [Doc. 1 at 9 ¶ 9.] As an employer, Greenville Internal Medicine was required to withhold federal income and Federal Insurance Contributions Act ("FICA") taxes from wages it paid to its employees and to pay over those withheld taxes to the government. [*Id.* ¶ 18; Doc. 53-2 at 9 ¶ 6.] It was also required to pay its own taxes under FICA and the Federal Unemployment Tax Act ("FUTA"). [Docs. 1 ¶ 18; 53-2 at 9 ¶ 7.] Greenville Internal Medicine continually and repeatedly failed to comply with its filing and payment obligations, however. [Docs. 1 ¶ 20; 53-2 at 9 ¶ 8.] And to the extent that Greenville Internal Medicine filed Employer's Quarterly Federal Tax Returns (Forms 941), it failed to timely pay the reported tax. [Doc. 1 ¶ 20.]

Because of these failures, a delegate of the Secretary of the Treasury assessed employment taxes against Greenville Internal Medicine for tax periods spanning from 2002 to 2017, issued notice of assessments, and demanded payment for the assessments. [*Id.* ¶ 21; Doc. 53-2 at 9 ¶¶ 9–12.] As of October 19, 2020, the total of the balances due, including for assessed and accrued late-filing and late-payment penalties under 26 U.S.C. § 6652, failure to deposit penalties under 26 U.S.C. § 6654, costs, and statutory interest,

---

insured] operated his business under another name did not create a separate legal entity for insurance purposes.").

3

and after applying any abatements, payments and credits, was $1,163,663.45. [Docs. 1 ¶ 22; 53-2 at 9 ¶ 14.]

Barry closed Greenville Internal Medicine in July 2017. [Docs. 1 ¶ 10; 53-2 at 9 ¶ 2.] In August 2017, however, he opened another medical practice, GIM. [Docs. 1 ¶ 10; 53-2 at 9 ¶ 4.] GIM is a corporation incorporated under the laws of South Carolina and is located in Greenville, South Carolina. [Doc. 1 ¶¶ 10–11.] Barry is GIM's owner and sole corporate officer. [*Id.* ¶ 11; Doc. 53-2 at 9 ¶ 4.] GIM has employees to whom it pays wages. [Docs. 1 ¶ 12; 53-2 at 9 ¶ 5.] GIM is required to pay its FICA and FUTA taxes but it failed to file Forms 941 for the tax periods ending September 30, 2017, through December 31, 2018, and June 30, 2019, through September 30, 2020. [Doc. 53-2 at 10 ¶¶ 16–17.] The IRS sent GIM letters addressing that failure. [*Id.* ¶ 18.]

Barry has an ownership interest in the property described in the Complaint ("the Subject Property").[4] [Docs. 1 ¶ 51; 53-2 at 9–10 ¶ 21.] Federal tax liens arose for Barry's

---

[4]That property is located at 207 Grove Road, Greenville, South Carolina, and is described in the Complaint as follows:

> All those pieces, parcels or lots of land situate, lying and being on the eastern side of Grove Road in Greenville Township, in the City of Greenville, Greenville County, South Carolina, being known and designated as Lot Nos. 63 and 64 as shown on a plat entitled "Plat of Cherokee Park" made by Brodie and Bedell dated October, 2909 and resurveyed July, 1913 recorded in the RMC Office for Greenville County in Plat Book C at page 96 and having, according to a more recent plat of the property of Ellis P. Campbell prepared by Carolina Surveying Co. and dated March 21, 1983, the following[] metes and bounds, to-wit:
>
> Beginning at an old iron pin on the eastern side of the right-of-way of Grove Road at the joint front corner of Lot Nos. 64 and 65, approximately 207.5 feet from the intersection of Grove

4

unpaid federal employment and unemployment tax liabilities on the assessment dates described in the Complaint. [Docs. 1 ¶ 21; 53-2 at 10 ¶ 22; 53-3 ¶ 5–7.] And federal tax liens arising from those tax liabilities encumber all property and rights to property belonging to Barry, including the Subject Property. [Doc. 53-2 at 10 ¶¶ 14, 23.] The IRS filed notices of federal tax lien in Greenville County, South Carolina, in 2016, 2017, and 2018, for Barry's unpaid tax liabilities. [*Id.* ¶ 24; Doc. 1 ¶ 54.]

For the tax year 2007, Maree failed to file her federal individual income tax return. [Doc. 53-2 at 3 ¶ 1.] Following an audit, the IRS determined that Maree owed tax and penalties for that tax year. [*Id.* at 4 ¶ 2.] On October 25, 2010, Maree filed a petition in the U.S. Tax Court challenging the IRS's audit determination, but the petition was later dismissed for lack of prosecution. [*Id.* ¶¶ 3–4.] For the tax year 2007, on June 4, 2012, the IRS assessed income tax against Maree in the amount of $327,569.00. [*Id.* ¶ 6; Doc. 53-3 ¶ 9.] On the same date, the IRS also assessed a late-filing penalty in the amount of $73,658.03 and a late-payment penalty in the amount of $81,892.25. [Doc. 53-3 ¶ 9.] For the tax year 2007, a delegate of the Secretary of the Treasury issued notice of the tax assessment described above, as well as a demand for payment. [Doc. 53-2 at 4 ¶¶ 7–8.]

---

> Road and Cateechee Road and running thence, with the joint line between Lot Nos. 64 and 65, S. 62-32 E., 193.0 feet to an old iron pin on a 15 foot alley, the joint rear corner of Lot Nos. 64 and 65; thence with said alley S. 27-28 W. 120.0 feet to a point in concrete at the joint rear corner of Lot Nos. 62 and 63; thence with the joint line between Lot Nos. 62 and 63, N. 62-63 W., 173.0 feet to an iron pin on the eastern side of the right-of-way of Grove Road, the joint front corner of Lot Nos. 62 and 63; thence with the right-of-way of Grove Road N. 18-48 E. 120.5 feet to an old iron pin, the point of beginning.

[Doc. 1 ¶ 51.]

However, Maree has failed to pay the full amount of the assessments. [*Id.* ¶ 9.] As of July 8, 2021, she owed $772,388.98, plus interest and statutory additions accruing after that date. [Doc. 53-3 ¶ 14.] She also has an ownership interest in the Subject Property. [Doc. 53-2 at 4 ¶ 10.] Federal tax liens for her unpaid federal income tax liabilities arose as of the date of the IRS's assessment, June 4, 2012. [*Id.* ¶ 11.] The liens at issue encumber all property and rights to property belonging to Maree, including the Subject Property. [*Id.* ¶ 12.] The IRS filed a notice of federal tax lien in Greenville County, South Carolina, on March 30, 2016, for Maree's unpaid federal income tax liabilities. [*Id.* ¶ 13.]

Plaintiff filed the instant action against the Blackstons, Greenville Internal Medicine, GIM, the Greenville County Office of the Tax Collector ("GCOTC"), the South Carolina Department of Employment and Workforce ("SCDEW"), and Cryptomaria.[5] [Doc. 1.] In Count One, Plaintiff seeks a monetary judgment against Greenville Internal Medicine for its outstanding federal employment taxes, together with penalties and interest. [*Id.* ¶¶ 24–28.] In Count Two, Plaintiff seeks injunctive relief against Barry and GIM. [*Id.* ¶¶ 29–42.] In Count Three, Plaintiff requests a monetary judgment against Maree for her outstanding tax liability, including assessed and accrued late-filing and failure-to-pay penalties under 26 U.S.C. § 6651, costs, and statutory interest, after applying any

---

[5]GCOTC is a department of the County of Greenville, South Carolina, and is named as a Defendant on the basis that it may claim an interest in the real property at issue by virtue of outstanding real property taxes owed by the Blackstons for 2017. [Doc. 1 at 4 ¶ 13.] SCDEW is a department of the State of South Carolina and is named as a Defendant on the basis that it may claim an interest in the real property at issue by virtue of judgments obtained from the Greenville County 13th Circuit Court in Case Numbers 2015CP2303633, 2017CP2307496, and 2018CP2301697. [*Id.* ¶ 14.] Cryptomaria is a South Carolina corporation named as a Defendant on the basis that it may claim an interest in the real property by virtue of a judgment obtained from the Greenville County 13th Circuit Court in Case Number 2015CP2306694. [*Id.* ¶ 15.]

abatements, payments, and credits. [*Id.* ¶¶ 43–50.] Finally, in Count Four, Plaintiff requests a declaratory judgment that would confirm the validity of a federal tax lien and its enforceability against the Subject Property. [*Id.* ¶¶ 51–55.]

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this

standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION[6]

Before the United States may assess a tax deficiency, it must properly send a notice of deficiency to the taxpayer. 26 U.S.C. §§ 6212, 6213. A "Certificate of Assessments and Payments"—also called a Form 4340—is "presumptive proof of a valid assessment." *United States v. Dixon*, 672 F. Supp. 503, 506 (M.D. Ala. 1987) (cited with approval in *Audio Invs. v. Robertson*, 203 F. Supp. 2d 555, 561 (D.S.C. 2002)). Such certificates and transcripts are "routinely used to prove the tax assessment has in fact been made." *Hovis v. Gilliam (In re Marine Energy Sys. Corp.)*, No. ADV.PRO. 08-80017-JW, 2009 WL 1465352, at *9 (Bankr. D.S.C. Mar. 24, 2009) (internal quotation marks omitted). "[T]hey also demonstrate notice of the assessment and demand for its payment has been issued." *Id.* Thus, "[a] district court may properly rely on [such] forms to conclude that valid assessments were made unless a taxpayer presents evidence to [t]he contrary." *United States v. Taylor*, No. 6:99-9247-24, 2000 WL 1683007, at *4 (D.S.C. Sept. 27, 2000). In this case, Plaintiff has provided such forms demonstrating that the assessments were made and that they remain unpaid.[7]

---

[6]The Court has jurisdiction "to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). The Court also has jurisdiction to enforce a lien and subject property to payment of tax where, as here, the United States has brought suit at the request of the Secretary of the Treasury to enforce a tax liability. *See* 26 U.S.C. § 7403(a). This Court is authorized to resolve all claims upon or liens to subject property, to order the property's sale if appropriate, and to determine how the sale proceeds will be distributed. 26 U.S.C. § 7403(c).

[7]These forms were presented as attachments to a declaration of Eric Helms. He states that he is employed by the IRS in Greenville, South Carolina, and he "secure[s] unfiled tax returns and collect[s] unpaid tax liabilities for both individuals and businesses" and that he has "been assigned to collect the unpaid employment tax liabilities of" Greenville Internal Medicine and GIM and the unpaid income tax liabilities of Maree [Doc.

9

**Count One**

Here, the record reflects that a delegate of the Secretary of the Treasury assessed federal employment and unemployment tax liabilities against Barry as discussed above. The Forms 4340 can be rebutted only by a showing that the assessments are arbitrary and without foundation. *United States v. Grant*, No. 1:12-cv-00042-JMC, 2013 WL 3229684, at *2 (D.S.C. June 25, 2013). Because Barry has not forecasted evidence to make that showing, there are no genuine disputes of material fact. The Court thus recommends that summary judgment be granted against Greenville Internal Medicine as to Count One and that Plaintiff be awarded judgment in the amount of $1,210,339.23 as of July 8, 2021,[8] plus interest and statutory additions that accrue afterwards. [Docs. 53-3 ¶ 12; *id.* at 9.]

**Count Two**

As noted, under Section 7402(a) of the Internal Revenue Code, district courts enjoy broad authority to issue injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). Such authority is "in

---

53-3 ¶ 1.] He states that "[i]n the course of performing [his] duties, [he has] access to and [is] readily familiar with IRS records, administrative files, and the IRS's computer system for storing and tracking information on taxpayers' accounts" and that he has "personal knowledge of the manner in which such records, administrative files, and computerized information are created and maintained." [*Id.* ¶ 2.] He explains that "[t]he computer system for storing and tracking information on taxpayers' accounts is called the Integrated Data Retrieval System ("IDRS"), and that with the system, "[a]s transactions (such as assessment or payments) occur on a taxpayer's accounts for a particular tax period, the transactions are electronically recorded in IDRS." [*Id.* ¶ 3.] "Account transcripts are automatically created when an IRS employee uses IDRS to look up information about the taxpayer's account for a particular period." [*Id.* ¶ 4.] Such transcripts "are kept in the ordinary course of the IRS's regularly conducted activities and it is the regular practice of the IRS to maintain these transcripts." [*Id.*]

[8]As the Court noted previously, as of October 19, 2020, the amount was $1,163,663.45. [Docs. 1 ¶ 22; 53-2 at 9 ¶ 14.]

addition to and not exclusive of any and all other remedies" available to the district courts to enforce the tax laws.  *Id.*  Such injunctive relief is appropriate "if the defendant is reasonably likely to violate the federal tax laws again."  *United States v. Palmetto Precast Inc.*, No. 3:19-cv-03098-JMC, 2021 WL 3758058, at *2 (D.S.C. Aug. 25, 2021) (internal quotation marks omitted).

"Courts are split as to the standard for granting an injunction pursuant to § 7402(a)."  *Id.*  "The Fourth Circuit has not determined whether the United States must show only that an injunction is 'necessary or appropriate' to enforce the internal revenue laws or whether the 'decision to issue an injunction under § 7402(a) is governed by the traditional factors shaping the district court's use of the equitable remedy.'"  *Id.*  Under the traditional factors, injunctive relief is appropriate when a plaintiff shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *Legend Night Club v. Miller*, 637 F.3d 291, 297 (4th Cir. 2011) (internal quotation marks omitted).  In this case, the Court concludes, for the reasons discussed below, that an order of permanent injunction would be appropriate under even the more stringent traditional standard.

### *Irreparable Harm*

The summary judgment record establishes that Barry and GIM's actions have caused Plaintiff irreparable harm and continues to do so.  Such harm includes Plaintiff's loss of tax revenue, including the loss of employees' FICA and income taxes for which the

employees already have received credit. It also includes damage to the tax system from other taxpayers' loss of confidence in the federal tax system and from encouraging noncompliance with tax laws. *See United States v. Anderson*, No. 3:10-510-JFA, 2010 WL 1988100, at *3 (D.S.C. May 5, 2010).

### *Lack of an Adequate Legal Remedy*

Section 7402 grants courts authority to award equitable relief, including injunctive relief, as such relief is required for the administration of the tax laws. Plaintiff has no other adequate remedy at law. Indeed, the IRS's letters, levies, and notices of federal tax lien have failed to yield any significant collection. [*See generally* Doc. 45-2]; *see Palmetto Precast*, 2021 WL 3758058, at *2. Accordingly, even if a money judgment may help address Barry's past violations, injunctive relief under 7402 is the only avenue available to Plaintiff to protect against future violations.

### *Injuries to the United States Outweigh Harm to Barry and GIM*

Injunctive relief requiring compliance with the law would cause no harm to Barry or GIM.

### *Public Interest*

Finally, injunctive relief would be in the public interest. The income tax and Social Security system depend on employers collecting and remitting their employees' FICA taxes, and Barry's and GIM's actions are undermining that system. An award of injunctive relief could bring about an end to this problem and eliminate the unfair advantage Barry and GIM have heretofore enjoyed over their law-abiding competitors.

For all of these reasons, the Court recommends that Plaintiff's summary judgment motion be granted as to Count Two and that a permanent injunction be entered against Barry and GIM barring them from failing to file and pay employment and unemployment taxes.

**Count Three**

A delegate of the Secretary of the Treasury assessed federal income taxes for the 2007 tax year against Maree. [Doc. 53-2 at 4 ¶¶ 6–8.] Maree could rebut the Form 4340 demonstrating the assessments only by showing that the assessments are arbitrary and without foundation. *Grant*, 2013 WL 3229684, at *2. However, she has not forecasted any such evidence. Accordingly, the Court recommends that Plaintiff's summary judgment be granted to Plaintiff on Count Three and that judgment be entered against Maree in the amount of $772,388.98 as of July 8, 2021, plus interest and statutory additions accruing after that date. [Doc. 53-3 ¶ 14.]

**Count Four**

According to federal law, in light of the Blackstons' failure to satisfy the assessments after notice and demand for payment, federal tax liens arose on the dates of the assessments and attached to all of their property and rights to property, including the Subject Property. Having joined all persons having liens upon or claiming any interest in the Subject Property, Plaintiff is entitled to enforce its federal tax liens. However, because of the COVID-19 pandemic, Plaintiff seeks only a declaratory judgment that the liens are enforceable. [Doc. 53-1 at 18.] Because the other parties claiming an interest in the Subject Property have stipulated as to the priority of their respective interests in the Subject

Property [Doc. 44],[9] there is no further issue for the Court to decide regarding the liens' enforceability.[10]  Accordingly, the Court recommends that Plaintiff's summary judgment

---

[9]The Court notes that Cryptomaria, despite being properly served with the Complaint, has failed to appear in this action or otherwise assert an interest in the Subject Property, and on April 2, 2021, the Clerk entered default against Cryptomaria. [Doc. 42.] For this reason, the Court construes Plaintiff's motion as one for default judgment pursuant to Federal Rule of Civil Procedure 55(b) as against Cryptomaria (and GIM, against which the Clerk has also entered default).  *See Bank of Camden v. Hooker*, No. 8:14-cv-01050-JMC, 2014 WL 4129579, at *1 n.1 (D.S.C. Aug. 19, 2014).  Moreover "[a] defendant's failure to assert an interest where a . . . complaint alleges that a defendant may have an interest . . . justifies a judgment extinguishing that interest." *United States v. Jackson*, No. 1:12cv1075 (LMB/IDD), 2013 WL 6989404, at *6 (E.D. Va. Aug. 5, 2013), *Report and Recommendation adopted by* 2013 WL 6073515 (E.D. Va. Nov. 18, 2013).  Accordingly, Plaintiff is entitled to judgment against Cryptomaria.

[10]In the event the Subject Property is sold, the net sales proceeds shall be applied first to GCOTC for property taxes for 2019, 2020, and 2021. [Doc. 44 ¶ 7.]  The property taxes for 2019 and 2020 are in the amount of $4,263.20 and $4,261.19, respectively. [*Id.*]  The property is also subject to a lien for the 2021 property taxes; however, those taxes are not yet due and payable.  [*Id.*]

In the event there are excess proceeds after the debt to GCOTC described in the previous paragraph is fully satisfied, the excess shall be applied next to SCDEW for its judgment obtained against Barry and Greenville Internal Medicine from the Greenville County 13th Circuit Court Case No. 2015CP2303633.  [*Id.* ¶ 8.]

In the event there are excess proceeds after the SCDEW debt described in the previous paragraph is fully satisfied, the excess shall be applied next to Plaintiff for Maree's outstanding federal income tax liabilities for 2007, Greenville Internal Medicine's outstanding federal unemployment taxes for 2003 through 2015, and Greenville Internal Medicine's outstanding federal employment taxes for the tax periods ending March 31, 2002, through March 31, 2003, and September 30, 2003, through March 31, 2017. [*Id.* ¶ 9.]

In the event there are excess proceeds after the debts to Plaintiff described in the previous paragraph are fully satisfied, the excess shall be applied next to SCDEW for its judgments obtained against Barry and Greenville Internal Medicine from the Greenville County 13th Circuit Court in Case Nos. 2017CP2307496 and 2018CP2301697. [*Id.* ¶ 10.]

In the event there are excess proceeds after the debt to SCDEW described in the previous paragraph is fully satisfied, the excess shall be applied next to Crypdtomaria, LLC for its judgment obtained from the Greenville County 13th Circuit Court in Case No.

motion be granted as to Count Four and that proceeds from any sale of the Subject Property be distributed according to the stipulated priority.

## RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Plaintiff's motion for summary judgment [Doc. 53] be construed as a motion for default judgment against Cryptomaria and GIM and for summary judgment against the remaining Defendants; that the motion be GRANTED; that the unpaid federal tax liabilities of Greenville Internal Medicine and Maree be reduced to judgment; that a permanent injunction be entered against Barry and GIM barring them from failing to file and pay employment and unemployment taxes; and that the Court declare that Plaintiff's liens are enforceable and that proceeds from any sale of the Subject Property shall be distributed according to the stipulated priority.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

October 13, 2021
Greenville, South Carolina

---

2015CP2306694.  [*Id.* ¶ 11.]